```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   --------------------------------x
                                          16-CR-021(LDH)
 3   UNITED STATES OF AMERICA,

                                          United States Courthouse
 4          Plaintiff,                    Brooklyn, New York

 5          -against-                     January 24, 2022
                                          12:00 p.m.
 6   XAVIER ONEAL,

 7          Defendant.
     --------------------------------x

 8
                      TRANSCRIPT OF CRIMINAL CAUSE FOR
 9                    VIOLATION OF SUPERVISED RELEASE
                  BEFORE THE HONORABLE LASHANN DEARCY HALL
10                      UNITED STATES DISTRICT JUDGE
                             VIA VIDEOCONFERENCE
11

12   APPEARANCES

13   For the Government:       UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
14                             271 Cadman Plaza East
                               Brooklyn, New York 11201
15                             BY:  NOMI D. BERENSON, AUSA

16
     For the Defendant:        ARMSTRONG TEASDALE, LLP
17                             7 Times Square, Floor 44
                               New York, New York 10036
18                             BY:  ERIC M. CREIZMAN, ESQ.

19

20   Court Reporter:           Georgette K. Betts, RPR, FCRR, CCR
                               Phone:  (718)804-2777
21                             Fax:    (718)804-2795
                               Email:  Georgetteb25@gmail.com
22

23


24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

PROCEEDINGS

1          (In open court; All present via videoconference.)

2          THE COURTROOM DEPUTY:  Criminal cause for change of

3     plea and sentencing.  Docket 16-CR-21.  U.S.A. versus Oneal.

4          As a reminder, persons granted remote access to

5     proceedings are reminded of the general prohibition against

6     photographing, recording, and rebroadcasting of court

7     proceedings.  Violation of these prohibitions may result in

8     sanctions, including removal of court-issued media

9     credentials, restricted entry to future hearings, denial of

10    entry to future hearings, or any other sanctions deemed

11    necessary by the court.

12          Counsel, please state your name for the record.

13          MS. BERENSON:  Good afternoon, your Honor.  Nomi

14    Berenson on behalf of the United States.

15          THE COURT:  Good afternoon, good to see you.

16          MR. CREIZMAN:  Good afternoon, your Honor.  Eric

17    Creizman on behalf of Xavier Oneal, and it's very nice to see

18    you.

19          THE COURT:  Nice to see you as well.  I see we have

20    Mr. Oneal on the line and we have a representative from the

21    Probation Department; is that correct?

22          THE PROBATION OFFICER:  Good afternoon.  Ryan Lehr

23    on behalf of probation.

24          THE COURT:  All right, folks.

25          So we're here today for a change of plea and

PROCEEDINGS

1    sentencing hearing related to charges included on a July 21st,

2    2021 violation of supervised release report.  Present today

3    are counsel for both the government, the defense has noted

4    their appearance for the record, the defendant is Mr. Oneal,

5    as well as a representative from the Probation Department.

6           Now, before I can proceed with this hearing in

7    earnest there is some housekeeping matters that I need to

8    address with respect to the conduct of these proceedings

9    remotely.

10          All right, folks.  On March 27th, 2021, Congress

11   passed the Coronavirus Aid Relief and Economic Security Act,

12   which authorized the judicial conference of the United States

13   to provide authority to chief district judges to permit the

14   conduct of certain criminal proceedings by video or audio

15   conference.  Thereafter, on March 30, 2020 by Administrative

16   Order 2020-13, then Chief Judge Mauskopf found that emergency

17   conditions due to the COVID virus outbreak would materially

18   affect the functioning of the Court within this judicial

19   district and therefore authorized judges in this district,

20   with consent of the defendant after consultation with counsel,

21   to use video conferencing to conduct proceedings such as

22   felony pleas under Rule 11 of the Federal Rules of Criminal

23   Procedure and felony sentencings under the same rules where

24   judges find for specific reasons that the proceeding in a

25   particular case cannot be further delayed without the serious

PROCEEDINGS

1    harm to the interest of justice.

2            Now this order has been extended through a series of

3    administrative orders, the most recent of which is

4    Administrative Order 2021-5-3 dated December 16, 2021 and

5    issued by Chief Judge Brodie.  By letter dated October 26,

6    2021, Mr. Oneal, through counsel, consented to proceed with

7    this hearing via video conference.

8            Now, I have made a determination that in light of

9    the ongoing pandemic and the backlog that has created with

10   respect to sentencing and in light of the specific facts of

11   this case, that this proceeding cannot be further delayed

12   without serious harm to the interests of justice.  With that

13   said, I need to ensure that Mr. Oneal's consent to proceeding

14   in this fashion is made knowingly and voluntarily.  As such,

15   I'm going to ask that Mr. Oneal answer some questions for the

16   Court so I can assess his competency, both with respect to the

17   consent and with respect to proceeding with the change of plea

18   and the sentencing.

19           Erica, can you please swear in Mr. Oneal.

20           THE COURTROOM DEPUTY:  Mr. Oneal, please raise your

21   right hand.

22           (The defendant, XAVIER ONEAL, was sworn/affirmed.)

23           THE DEFENDANT:  Yes.

24           THE COURTROOM DEPUTY:  Thank you.

25           THE COURT:  Mr. Oneal, do you understand that you

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1   are now under oath and if you answer any of my questions

2   falsely your answers may later be used against you in another

3   prosecution for perjury or making a false statement.

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  All right.  Mr. Creizman, have you

6   discussed this matter with Mr. Oneal?

7                    MR. CREIZMAN:  Yes, sorry, your Honor, I have.  Yes,

8   I have.

9                    THE COURT:  Is he capable of understanding the

10  nature of these proceedings?

11                   MR. CREIZMAN:  Yes, your Honor.

12                   THE COURT:  And do you have any doubt as to his

13  competency to understand today's proceedings?

14                   MR. CREIZMAN:  I do not.

15                   THE COURT:  Mr. Oneal, can you state your full name,

16  please.

17                   THE DEFENDANT:  Xavier Oneal.

18                   THE COURT:  How old are you, sir?

19                   THE DEFENDANT:  Twenty-seven.

20                   THE COURT:  How much education have you had?

21                   THE DEFENDANT:  Tenth grade.

22                   THE COURT:  Tenth grade.  Where did you go to

23  school?

24                   THE DEFENDANT:  Harker Heights High school.

25                   THE COURT:  Where is that?

PROCEEDINGS

1          THE DEFENDANT:  Killeen, Texas.  Harker Heights,

2     Texas.

3          THE COURT:  Harker Heights, Texas.

4          You're able to understand and speak English; is that

5     correct?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Mr. Creizman, you've been able to

8     communicate with Mr. Oneal in English; is that correct?

9          MR. CREIZMAN:  Yes, your Honor.

10         THE COURT:  Mr. Oneal, have you ever been treated or

11    hospitalized for any mental illness?

12         THE DEFENDANT:  No.

13         THE COURT:  Are you currently or have you recently

14    been under the care of a doctor or a psychiatrist for any

15    reason?

16         THE DEFENDANT:  Psychiatrist, no.

17         THE COURT:  Have you recently been in the care of a

18    medical doctor for any reason?

19         THE DEFENDANT:  Besides like regular, like, asthma,

20    for my asthma, other than that, no.

21         THE COURT:  For your asthma?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Have you ever been treated or

24    hospitalized for any type of addiction, and that would include

25    drug or alcohol addiction?

7

PROCEEDINGS

1              THE DEFENDANT:  No, ma'am.

2              THE COURT:  Have you taken any drugs, medicine,

3    pills or had any alcoholic beverages in the past 24 hours?

4              THE DEFENDANT:  No, ma'am.

5              THE COURT:  Is your mind clear today?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  You understand what's happening here

8    today?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Are you consenting to the conduct of

11   this hearing which includes your change of plea and sentencing

12   voluntarily and of your own free will?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Has anyone threatened or forced you to

15   conduct this hearing via video conference?

16             THE DEFENDANT:  No.

17             THE COURT:  Has anyone made you any promises that

18   caused you to consent to conducting this hearing via video

19   conference?

20             THE DEFENDANT:  No, ma'am.

21             THE COURT:  All right.  Based on my observations of

22   Mr. Oneal, his demeanor, his answers to my questions, as well

23   as the representations from his counsel, I find that he is

24   fully competent and capable of entering a consent to conduct

25   his change of plea hearing and sentencing via video

PROCEEDINGS

1  conference.  I also find that his consent is entered into

2  knowingly and voluntarily.  I, therefore, accept his consent

3  and coupled with my independent factual finding I will now

4  pursue -- I'm sorry, I will now proceed via video conference

5  consistent with the CARES Act.

6          All right, Mr. Creizman, I understand that Mr. Oneal

7  wishes to plead guilty to Charges Two and Four of the

8  July 21st, 2021 violation of supervised release report.

9          MR. CREIZMAN:  That's correct, your Honor.

10         THE COURT:  Mr. Oneal, as you heard, Mr. Creizman

11  says that you wish to plead guilty to Charges Two and Four of

12  the July 21st violation of supervised release report.

13         Now to be clear, Charge Two charges that you

14  violated the conditions that you shall not commit another

15  federal, state or local crime by committing the crime of petty

16  larceny on June 13th, 2021.  And Charge Four charges that you

17  violated the condition of home confinement with electric

18  monitoring by using approved employment leave for other

19  purposes and failing to remain home when instructed between

20  May 27th, 2021 and June 13th, 2021.

21         Is it correct that you wish to plead guilty to these

22  two charges?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  All right.  Now this is a serious

25  decision and I must be certain that you're making it

PROCEEDINGS

1    understanding your rights and the consequences of your plea.

2    So what I'm going to do now is explain to you the rights that

3    you will be giving up by pleading guilty.

4          Now before I accept your guilty plea, there are a

5    number of questions that I must ask to establish that it is a

6    valid and knowing plea and that you are acting voluntarily.

7          Give me a second.

8          If you would like to consult with your attorney at

9    any time for any reason, please let me know and I'll give you

10   as much time as you need to do so.  And if you don't

11   understand any of my questions, please say so and I will

12   reword the question.

13         All right.  Mr. Oneal, have you reviewed a copy of

14   the violation of supervised release report that is pending

15   against you, and that is the written document that identifies

16   the charges made against you in this case?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  And have you fully discussed the charges

19   as well as the case in general with your attorney?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Mr. Oneal, do you understand the charges

22   that have been made against you?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  Do you believe you had sufficient time

25   to discuss them with your attorney whether or not to plead

PROCEEDINGS

1    guilty?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Are you fully satisfied with the

4    counsel, representation and advice given to you in this case

5    by your attorney?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  All right.  Now, Mr. Oneal, you should

8    understand that you have the right to plead not guilty to the

9    charges of supervised release and to make the government prove

10   that you committed the violations for which you are charged.

11   If you choose to plead not guilty, I would schedule an

12   evidentiary hearing at which time the government would have to

13   put forth evidence to prove that you committed the violation

14   with which you are charged.  Now at that hearing you would

15   have the right to be represented by your attorney, you would

16   have the opportunity to cross examine the government's

17   witnesses and otherwise challenge the government's evidence.

18   You would also have the right to testify, if you so choose,

19   and put forward your own evidence regarding the charges.

20             Do you understand that, sir?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Are you willing to give up your right to

23   an evidentiary hearing and the other rights that I just

24   described?

25             THE DEFENDANT:  Yes, ma'am.

PROCEEDINGS

1          THE COURT:  What I'm going to do now, Mr. Oneal, is

2     I'm going to explain to you the possible penalties for the

3     crimes to which you'll be pleading guilty.

4          Now as to Charge Two and Charge Four, the Court may

5     revoke the term of supervised release and sentence you to a

6     term of imprisonment not to exceed the maximum term of

7     imprisonment authorized under 18 U.S.C., Section 3583(e)(3),

8     which in this case, sir, is two years.  The Court may also

9     order a new term of supervised release to follow each charge.

10    The new term of supervised release following a violation can

11    be up to the maximum term of supervised release that was

12    authorized at the original sentencing, which in this case is

13    three years, minus any custody order or prior and current

14    violations.

15         Mr. Oneal, do you understand the possible

16    consequences of a guilty plea here?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  I want to speak to you now, sir, about

19    the sentencing guidelines.

20         Under the Sentencing Reform Act of 1984, the United

21    States Sentencing Commission has issued guidelines for judges

22    to follow in determining the sentence in a criminal case.  Now

23    these guidelines, Mr. Oneal, are advisory and I will consider

24    them along with the particular facts and circumstances of your

25    case and all the sentencing factors set forth in the relevant

PROCEEDINGS

1  federal statute and, that is, 18 U.S.C., Section 3553(a) in

2  determining your sentence.

3          Now put it another way, the guidelines are a way to

4  help the Court determine where within a particular range your

5  sentence should fall and whether supervised release and/or a

6  fine should be imposed and, if so, how much.  The guidelines,

7  Mr. Oneal, are not mandatory but the Court is required to

8  consider the guidelines.

9          Mr. Oneal, have you and your attorney discussed how

10  the advisory sentencing guidelines might apply to your case?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Mr. Creizman, have you discussed with

13  Mr. Oneal how the Court will use the statutory penalties, the

14  sentencing guidelines and the 3553(a) factors to arrive at an

15  appropriate sentence?

16          MR. CREIZMAN:  Yes, your Honor, I have.  I'm sorry.

17          THE COURT:  No, no worries.

18          Now, Mr. Oneal, do you understand that your sentence

19  will be determined by a combination of the advisory sentencing

20  guidelines, possible authorized departures from the

21  guidelines, and other statutory factors?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do you understand that the sentence I

24  impose may be different from any estimate your attorney may

25  have given you?

PROCEEDINGS

1       THE DEFENDANT:  Yes, ma'am.

2       THE COURT:  I want to be clear about that.  Any

3   estimate that your attorney may have given you could be wrong

4   and ultimately it's the Court's determination as to what the

5   appropriate sentence would be.

6       Do you understand?

7       THE DEFENDANT:  Yes, ma'am.

8       THE COURT:  Do you understand after your initial

9   advisory guideline range has been determined, I have the

10   authority in some circumstances to depart upward or downward

11   from the advisory guideline range and that could result in a

12   sentence that is either greater or lesser than the advisory

13   guidelines sentence.

14       THE DEFENDANT:  Yes, ma'am.

15       THE COURT:  All right.  You understand, sir, that

16   there is no parole in the federal system and that if you are

17   sentenced to prison you will not be released on parole?

18       THE DEFENDANT:  Yes, ma'am.

19       THE COURT:  All right.  Does the government wish to

20   indicate what it believes the appropriate -- the applicable,

21   not appropriate, the applicable guidelines range is here.

22       MS. BERENSON:  Your Honor, the government concurs

23   with the Probation Department's analysis in the report and so,

24   therefore, the applicable guidelines range would be eight to

25   14 months.

PROCEEDINGS

1        THE COURT:  All right.  Mr. Creizman, do you have a

2    different estimate that you would like to provide to the

3    Court?

4        MR. CREIZMAN:  I don't, your Honor.  Although, as I

5    note in my sentencing submission, that we are asking for a

6    downward variance on the criminal history category to number

7    four, which would result in a six to 12-month range.

8        THE COURT:  We'll talk about that.

9        Mr. Oneal, you've heard the government provide an

10   estimate of 18 to 14 months.  You've also heard your attorney

11   indicate that an agreement with the 18- to 14-month guideline

12   range, but making reference to the fact that in the past the

13   Court had downwardly departed from that -- from the applicable

14   guideline range having indicated that your criminal history

15   previously was overstated.

16       MS. BERENSON:  Your Honor?

17       THE COURT:  Yes.

18       MS. BERENSON:  If I may, it's eight to 14 months,

19   not 18 to 14 months.

20       THE COURT:  Did I not say eight?

21       MS. BERENSON:  Unless I misunderstood.

22       THE COURT:  All right.  I don't know.  To be clear,

23   it's eight to 14 months.  Okay.

24       Mr. Oneal, do you understand that the estimates that

25   have been offered by the government, the Probation Department

PROCEEDINGS

1    and by your attorney could be wrong?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Do you understand that there is no

4    guaranty as to a particular guideline range or sentence?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  And do you understand that ultimately I

7    must determine the applicable range?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  But do you also understand, sir, I'm not

10   required to sentence you to that range?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Do you understand that if the advisory

13   guideline range I determine is different than the guideline

14   range you expect, you cannot take your plea back?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Do you understand that if the ultimate

17   sentence I impose is different than what you hope for or

18   expect, you cannot take your plea back?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  All right.  Mr. Oneal, do you have any

21   questions that you would like to ask me about the charge or

22   your rights or anything else before we proceed?

23             THE DEFENDANT:  No, ma'am, not at this moment.

24             THE COURT:  Would you like any additional time to

25   speak with your attorney?

PROCEEDINGS

1          THE DEFENDANT:  No, ma'am.

2          THE COURT:  So are you ready to enter a plea at this

3     time?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Mr. Creizman, do you know of any reason

6     why Mr. Oneal should not plead guilty?

7          MR. CREIZMAN:  No, I don't, your Honor.

8          THE COURT:  All right.  Mr. Oneal, what is your plea

9     as to Charge Two, which charges you with violating the

10     mandatory condition that you not commit another federal, state

11     or local crime?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  And, sir, what is your plea as to Charge

14     Four, which charges you with violating the mandatory condition

15     of home confinement with electronic monitoring?

16          THE DEFENDANT:  Guilty.

17          THE COURT:  Are you making the plea of guilty for

18     each Charge Two and Four voluntarily and your own free will?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Has anyone threatened or forced you to

21     plead guilty?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Has anyone made you any promises that

24     caused you to plead guilty?

25          THE DEFENDANT:  No, ma'am.

PROCEEDINGS

1          THE COURT:  Has anyone made any promises to you as

2   to what your sentence will be?

3          THE DEFENDANT:  No, ma'am.

4          THE COURT:  All right.  Now, what I'd like to do now

5   is hear from you, sir, what is the conduct that you engaged in

6   that makes you guilty of Charge Two and Charge Four.

7   Mr. Creizman, if there's a prepared statement he's free to

8   read that, otherwise I'll hear from him.

9          MR. CREIZMAN:  Your Honor, there is a prepared

10  statement -- actually Mr. Oneal and I worked together on this

11  prepared statement a few months ago.  In just talking with him

12  before the weekend I said I would re-send the statement

13  through Corrlinks email and he -- but as of this morning he

14  had not received it.  And so I wonder if I could take a moment

15  to just talk to him just to make sure he's comfortable with

16  making a statement as to the offense conduct, you know,

17  because we had prepared a statement.

18          I just am wondering whether -- if he feels

19  comfortable to proceed, otherwise that's fine as well --

20          THE COURT:  He has to allocute one way or another.

21  If you need a few minutes, that's fine.  I'm not certain you

22  can mute your devices.

23          Do you have a way to communicate with him?

24          MR. CREIZMAN:  Yes, if Mr. Oneal is able to call --

25  so he called my cell shortly before this appearance, but I'm

PROCEEDINGS

1  not sure whether he's able to now, but if he is, great.  If

2  not, we can proceed.

3          THE COURT:  Let's take a five minute recess.

4          MR. CREIZMAN:  Thank you.

5          THE COURT:  If you could please, though, don't

6  forget to mute your devices so that we don't hear your

7  conversation.

8          MR. CREIZMAN:  Of course, thank you.  I apologize, I

9  appreciate it.

10          THE COURT:  No worries.  Thanks.

11          (Pause in proceedings.)

12          THE COURT:  Mr. Oneal, do you need to get one of the

13  officer's attention so you have the ability to use the phone?

14          I think he's frozen.

15          (Pause in proceedings.)

16          THE COURT:  His device is not muted, but he's

17  frozen.

18          MR. CREIZMAN:  We're talking now actually.  It looks

19  like he's frozen.

20          THE COURT:  You know what it is, I think his device

21  is muted because the screen is frozen, I'm not getting the

22  indication that it's actually muted, okay.

23          MR. CREIZMAN:  Okay, thank you.

24          (Pause in proceedings.)

25          MR. CREIZMAN:  Thank you.

PROCEEDINGS

1          (Resumed.)

2          THE COURT:  All right.  Is Mr. Oneal ready to

3    proceed?  We need to get his system back, he's frozen.  There

4    we go.  Okay.

5          MR. CREIZMAN:  There he is.

6          THE COURT:  All right.  Mr. Oneal, let's start with

7    Charge Two.  Would you please tell the Court the conduct that

8    you engaged in which makes you guilty of Charge Two.

9          THE DEFENDANT:  On Charge Two on June 13th, 2021 I

10   entered a Home Depot, took merchandise from shelves, placed in

11   my shopping cart and left the store without paying.  I knew

12   what I did was wrong and against the law.

13          For Count Four, between May 27th, 2021 and

14   June 13th, 2021, I violated my conditions of home confinement

15   with electronic monitoring by using my appointment leave for

16   purposes other than my job and failure to remain home when

17   supposed to.

18          THE COURT:  Just so that I'm clear, you visited the

19   Wood Haven Home Depot on May 27th and on May 29th and May 31st

20   of 2021; is that correct?

21          THE DEFENDANT:  May 27 --

22          THE COURT:  You visited the Wood Haven Home Depot

23   three times:  May 27th, May 29 and May 31st of 2021.

24          If you don't recall specifically, that's fine.

25          THE DEFENDANT:  I don't recall specifically.

PROCEEDINGS

1          THE COURT:  But do you recall that you visited the

2   Wood Haven Home Depot approximately three times.

3          THE DEFENDANT:  Yes, yes, ma'am.

4          THE COURT:  All right.  And do you recall that you

5   visited the Gateway Home Depot on one occasion?

6          THE DEFENDANT:  I'm not too sure.

7          THE COURT:  You're not sure about that one?

8          THE DEFENDANT:  No, ma'am.

9          THE COURT:  What about the Northern Boulevard Home

10  Depot on May 31st and June 5th, do you recall those visits?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  What about on May 31st and June 5th, the

13  25th Avenue Home Depot?

14         THE DEFENDANT:  I don't recall, ma'am.

15         THE COURT:  You don't recall.

16         And what about a visit to the Maspeth Home Depot on

17  May 31st and June 5th?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  All right.  Do you also recall that

20  after you were instructed not to leave your home by the

21  Probation Department after your arrest, that you left your

22  residence approximately 13 times on June 20, 2021; June 27th,

23  2021; July 1st, 2021; July 2nd, 2021; July 4th, 2021;

24  July 5th, 2021; July 6th, 2021; July 7th, 2021; July 9th,

25  2021; July 10, 2021; July 12, 2021; July 13, 2021; and

PROCEEDINGS

1  July 14, 2021.

2           Do you recall leaving your residence without

3  approval from the Probation Department on those dates?

4           THE DEFENDANT:  I don't know precisely if I left my

5  residence or it was like in my building because -- but, yes,

6  ma'am.

7           THE COURT:  Okay, you realize your residence would

8  be your apartment.  So if you went downstairs to somebody

9  else's house, you understand that's not your residence, right?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  You understand the lobby is not your

12  residence, right?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  All right.  So when I ask if you left

15  your residence on those occasions, you agree that you left

16  your residence on those occasions?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Ms. Berenson, do you require any further

19  information from Mr. Oneal before we proceed?

20          MS. BERENSON:  No, your Honor.

21          THE COURT:  All right.  Now based on my observations

22  of Mr. Oneal, his demeanor in court, his answers to my

23  questions and the representations of his counsel, I find that

24  he is fully competent and capable of entering an informed plea

25  and he is aware of the nature of the charges and consequences

PROCEEDINGS

1    of his plea.  I, therefore, find his plea of guilty as to each

2    Charge Two and Charge Four as knowing and voluntary and

3    supported by an independent bases and facts containing the

4    essential elements of each offense.  I, therefore, accept

5    Mr. Oneal's plea of guilty as to Charges Two and Four of the

6    July 21st, 2021 violation of supervised release report.

7            Now my understanding is that counsel is prepared for

8    the Court to immediately move to sentencing, yes?

9            MR. CREIZMAN:  Yes, your Honor.

10           THE COURT:  All right.  Now in advance of the

11   sentencing hearing I did receive a July 21st, 2021 violation

12   of supervised release report filed on the docket as ECF number

13   185.  I also received a letter dated October 26, 2021 from

14   counsel, defense counsel informing the Court of Mr. Oneal's

15   intent to enter a change of plea and sentence remotely, as

16   well as a sentencing submission by Mr. Creizman dated

17   November 16, 2021.

18           Ms. Berenson, am I correct I did not receive any

19   sentencing submission from the government or did I miss it?

20           MS. BERENSON:  You did not, your Honor.  Yes, the

21   government is in complete accord with the Probation Department

22   and agrees with its sentencing recommendation.

23           THE COURT:  Okay.

24           MS. BERENSON:  I think the government might

25   specifically advocate for a guideline sentence, but for the

PROCEEDINGS

1   reasons set forth in the Probation Department, the government

2   is in accord with the Probation Department.

3           THE COURT:  All right.  Just give me a moment,

4   folks.

5           (Pause in proceedings.)

6           THE COURT:  Forgive me.  All right.

7           Are there any other documents that the Court should

8   have before it at this time, any other submissions either

9   party would like to make?

10          MR. CREIZMAN:  No, your Honor, although I just --

11  I'm not sure whether I -- whether your Honor received the

12  report from Dr. Eric Goldsmith, I believe your Honor did, but

13  I just don't remember --

14          THE COURT:  I did.

15          MR. CREIZMAN:  -- if it was sent separately or as an

16  exhibit.

17          THE COURT:  No, it was filed with your sentencing

18  submission --

19          MR. CREIZMAN:  Yes, okay.

20          THE COURT:  -- and the sentencing submission is

21  document 208.  Dr. Goldsmith's letter is document 208-1.

22          MR. CREIZMAN:  Thank you, sorry.

23          THE COURT:  That's all right.

24          As I discussed previously, with respect to the

25  statutory penalty here, the Court may revoke the term of

PROCEEDINGS

1    supervised release and sentence Mr. Oneal to a term of

2    imprisonment not to exceed the maximum term previously

3    authorized, which under 18 U.S.C. 3583(e)(3), again which in

4    this case is two years, I have already set out in the change

5    of plea portion of this proceeding the Court's calculation of

6    the sentencing guideline -- no, I didn't.  Forgive me.  I did

7    not.  Let me do it now.

8              Charge Two is a Grade C violation as defined by

9    Sentencing Guideline 7B1.1(A)(3).  Upon a finding of a Grade C

10   violation, the Court may revoke supervised release and impose

11   custody or extend or modify the existing term of supervised

12   release and that is pursuant to Sentencing Guidelines

13   Section 7B1.3(A)(2).  Now since the Criminal History Category

14   of VI was found applicable at the original sentencing, the

15   custodial term for this violation is eight to 14 months and

16   that is pursuant to Sentencing Guidelines Section 7B1.4(A).

17             Charge Four is a Grade C violation as defined by

18   Sentencing Guidelines Section 7B1.1(A)(3).  Again, upon a

19   finding of a Grade C violation, the Court may revoke

20   supervised release and impose custody or extend or modify the

21   existing term of supervised release.  Here again because the

22   Criminal History Category of IV was found applicable at the

23   original sentencing, the custodial term for this violation is

24   also eight to 14 months.

25             Are there any objections for the record?

PROCEEDINGS

1       MR. CREIZMAN:  No objection to your Honor's

2  calculation.

3       THE COURT:  All right.  Now the government has made

4  it clear that it believes that a guideline sentence in this

5  case is appropriate.  I will hear from Mr. Creizman -- hold on

6  a second.  If I said he had a criminal category -- my clerk

7  thinks I misspoke.  If I said he had a Criminal Category of

8  IV, I meant VI.

9          In any event, Mr. Creizman, I don't believe that it

10  is your position that there are any statutory departures that

11  are applicable to this case, but rather that the Court should

12  employ its authority to vary downward; is that right?

13       MR. CREIZMAN:  That's correct, your Honor, that's

14  correct.

15       THE COURT:  So let me just set out the law with

16  respect to variances.

17          After calculating the guidelines and considering the

18  propriety of a departure, of which I find no basis, I must now

19  consider the relevant factors set out by Congress in 18

20  U.S.C., Section 3553(a) to ensure that I impose a sentence

21  that is sufficient, but not greater than necessary to comply

22  with the purposes of sentencing.  Now these purposes include

23  the need for the sentence to reflect the seriousness of the

24  crime, promote respect for the law, as well as provide just

25  punishment for the offense.  The sentence should also deter

PROCEEDINGS

1    criminal conduct, protect the public from future crime by the

2    defendant, and promote rehabilitation.

3           In addition to the guidelines and policy statements,

4    I must consider the nature and circumstances of the offense,

5    the history and characteristics of the defendant, the need to

6    avoid unwarranted sentence disparities amongst similarly

7    situated defendants, and the types of sentences available.

8           Here you are, you moved.  Sorry, the screen is

9    moving around.

10          Ms. Berenson, did you want to say something?

11          MS. BERENSON:  I just got kicked off and got back on

12   but for a moment you froze on my screen and it was silent, I

13   didn't know if that happened to others as well.

14          MR. CREIZMAN:  It did not happen with me, the screen

15   moved around.

16          THE COURT:  The screen did move around, it did.  I

17   looked up and you were in a different place.

18          MS. BERENSON:  Okay.

19          THE COURT:  What I said, Ms. Berenson, you've heard

20   me say a gazillion times, which is the backdrop against -- the

21   legal backdrop against which the Court must consider

22   variances.

23          MS. BERENSON:  Thank you.

24          THE COURT:  All right.  I'll hear from defense

25   counsel first.

PROCEEDINGS

1          MR. CREIZMAN:  Thank you, your Honor.  I don't want

2   to -- I'm sure your Honor -- and I know your Honor has read

3   all of the submissions and carefully.  There are just a couple

4   of things I want to highlight and point out.  I mean, I got in

5   to speak to and talk with Mr. Oneal from the time right before

6   he was remanded, the day before he was remanded and actually

7   did what the Court ordered, which of course is expected, but

8   he did report -- he did self-surrender to the Marshals

9   Service.

10          You know, Mr. Oneal is a very nice person.  He's a

11   kind person.  He's a friendly person and he is someone who I

12   sense, at least, he wants to get -- wants to turn his life

13   around.  I mean, he said that in words to the Court before,

14   he's written to the Court before.

15          And there is a huge disconnect between what

16   Mr. Oneal has said and I think actually Count Four is a little

17   in some ways more concerning in terms of the violations of

18   home confinement by just leaving whenever it seems like --

19   serially leaving day after day after day.  And I started

20   reading his prior history in terms of -- and it seems that he

21   was diagnosed at one time, or teachers of his suspected he had

22   ADHD, and that is consistent with what I understand, you know,

23   his impulsivity it seems to me.

24          I mean, what the ultimate point is, is that we have

25   an opportunity here to try to guide, to help Mr. Oneal get in

PROCEEDINGS

1   the best possible -- give him the best possible chance to

2   succeed so he doesn't keep coming back to court and through

3   the justice system.

4           THE COURT:  Didn't I do that for Mr. Oneal when I

5   let him out of jail?

6           MR. CREIZMAN:  You did, your Honor, you absolutely

7   did.  I think the one difference that I think -- the one thing

8   that we may want to try here is to get him -- is to order

9   mental health treatment in addition to the substance abuse

10  issue.  But I think --

11          THE COURT:  The substance abuse issue that Mr. Oneal

12  has denied and doesn't necessarily bear out with the test.

13  Putting aside --

14          MR. CREIZMAN:  Recently, yes.

15          THE COURT:  Putting aside the marijuana, I

16  understand he tested positive for the marijuana, but there was

17  at least a suggestion that Mr. Oneal used other substances and

18  the tests did not bear that out and Mr. Oneal denied any such

19  dependency.

20          MR. CREIZMAN:  Yes, that I recall.  I do recall

21  that.  But I know there's been a history of use of substances

22  and that's kind of what I'm referring to not necessarily the

23  triggering --

24          THE COURT:  But if it's not a present issue --

25          MR. CREIZMAN:  No -- yes, absolutely.  I think the

PROCEEDINGS

1   focus here would honestly be on the -- on addressing what

2   we -- what Dr. Goldsmith thinks is a severe form of ADHD and I

3   think that -- I think that that's -- there is an opportunity

4   here at least to try that and see if it could -- and see if

5   Mr. Oneal can take advantage of that.

6        He has a very supportive family.  His adoptive

7   mother and his siblings, you know, from that family they're

8   all very supportive.  They are accomplished people, they are

9   working people, and I think that -- you know, we have to try

10  something so that Mr. Oneal is not stuck in this situation.

11       THE COURT:  I guess I'm confused.  I've never heard

12  of ADHD being identified medically as a basis for someone to

13  commit federal, state and local crimes.  I've never seen there

14  being any connection between the two.  Putting aside the fact

15  that Mr. Oneal decided that he could ignore the orders of this

16  Court and his probation officer and leave even after being

17  arrested, and so I've never heard of there being any medical

18  connection between ADHD and the commission of the types of

19  crimes that Mr. Oneal has pleaded guilty to with respect to

20  Charge Two, but of course the Court may consider uncharged

21  conduct and sentence him as well and so there were additional

22  larcenies that were charged originally in this complaint of

23  the same sort and nature as Charge Two.

24       MR. CREIZMAN:  Understood.  I understand that

25  ADHD -- there may or may not -- you know, I'm not aware of any

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1    studies that show a correlation necessarily between ADHD and

2    criminal activity, but there is a very strong correlation

3    between ADHD and impulsivity --

4               THE COURT:  Right.  But let's talk about the

5    criminal activity, because what I have here is a defendant who

6    I personally undertook, through a really lengthy resentencing

7    hearing, to release him on time served and he immediately

8    began to engage in criminal activity.

9               So I understand, Mr. Creizman, that you're saying

10   that you think that the more serious issue here is him

11   leaving, taking unauthorized departures from his home, but I

12   haven't yet resolved myself with respect to the criminal

13   activity that Mr. Oneal engaged in immediately.

14              MR. CREIZMAN:  Well, obviously I'm not a

15   psychiatrist, but I do wonder whether the extreme impulsivity

16   that he seems to have might be, might contribute in some way

17   to his desire to, you know -- you know, apparently, you know,

18   going off the -- going off the way --

19              THE COURT:  Yes, but -- wait, we've got to stop for

20   a second.  It doesn't seem all that impulsive to me.  If you

21   look at the charges here and you look at what Mr. Oneal did,

22   he, on many of these days, visited multiple Home Depots,

23   multiple Home Depots.  He didn't just happen to be in a Home

24   Depot then find himself with $1300 worth of merchandise in his

25   pocket.  What he did was, he lied about where he was suppose

PROCEEDINGS

1   to go, knowing he wasn't supposed to go there, then traveled

2   on a single day to multiple Home Depots, which speaks not to

3   impulsivity right, but the planning and calculation and utter

4   lack of regard not just for the order of this Court but for

5   the opportunity that this Court gave him.

6           MR. CREIZMAN:  I certainly appreciate that, your

7   Honor.  I do.  And I think that Mr. Oneal has, you know -- is

8   being appropriately punished for that conduct, you know, and

9   my suggestion -- by the way, I did want to correct something

10  in my sentencing submission that came to my attention just

11  recently.  I had mentioned that he previously was in a halfway

12  house and he did -- did well in the structure of the halfway

13  house.  Apparently I misunderstood in that he did not in

14  his -- when he was previously released he did not have a

15  halfway house term.  But I do think that rather than

16  additional confinement in a prison, that he might benefit from

17  the halfway house, the structure of the halfway house.  The

18  ability to see his -- to spend time with his daughter

19  potentially and the ability to be -- to go to programs and to

20  be held accountable for those programs, you know, and

21  specifically mental health treatment.  That's --

22          THE COURT:  But this was an opportunity that was

23  provided to Mr. Oneal, I gave it to him, right?

24          MR. CREIZMAN:  Yes, I understand.

25          THE COURT:  I mean, the circumstances of this case,

PROCEEDINGS

1  the facts of this case are so maddening to me, they are

2  maddening to me --

3          MR. CREIZMAN:  I understand.

4          THE COURT:  -- because I gave him the opportunity

5  and when I gave him the opportunity, and I'm certain,

6  Mr. Creizman, you have looked at the transcript --

7          MR. CREIZMAN:  Yes.

8          THE COURT:  -- I made it abundantly clear to

9  Mr. Oneal that he should not mistake kindness for weakness and

10  that my expectation of him is that he was going to take this

11  opportunity and do with it what the Court and what I would

12  hope, based on what he said to me, right, because there are

13  also representations by Mr. Oneal made to me that day --

14          MR. CREIZMAN:  Yes.

15          THE COURT:  -- and I will note that the Court's

16  determination on that day to release Mr. Oneal on time served

17  was over the strenuous objection by the government.  The

18  government said, Judge, you're wrong.  You've got it wrong

19  here.  You're making a mistake.  And I said, well, you believe

20  what you want, I want to give Mr. Oneal this opportunity.  And

21  what did Mr. Oneal do immediately, and repeatedly.  Mr. Oneal

22  has a problem.

23          Mr. Oneal has got to get introduced to all sides of

24  Judge DeArcy Hall.  He was able to see the other side of Judge

25  DeArcy Hall, but I made myself clear on the day that I granted

PROCEEDINGS

1  the compassionate release and released Mr. Oneal to time

2  served.

3           You know, your sentencing submission here,

4  Mr. Creizman, it speaks about alternatives to incarceration,

5  which I am in favor of --

6           MR. CREIZMAN:  I understand.

7           THE COURT:  -- absolutely.  Anybody can look at my

8  track record and the way in which I address sentencings and

9  individuals, my ultimate goal is to provide them with the

10  resources and opportunities to make different choices in their

11  life, but there also must be accountability and --

12           MR. CREIZMAN:  Absolutely.

13           THE COURT:  -- here you said about alternatives to

14  incarceration that his repeated history with the criminal

15  justice system and the danger of further incarceration would

16  cause him to be trapped in a cycle where he oscillates between

17  supervised release and prison.

18           Well, first of all, it's not his history with the

19  criminal justice system that's going to put him in prison,

20  it's his current engagement in criminal activity that would

21  put him --

22           MR. CREIZMAN:  Absolutely.

23           THE COURT:  -- back in prison.  We don't -- this is

24  not a situation here, because I don't do it, where I would

25  put, you know, let's say, for example, a minor supervision

PROCEEDINGS

1   violation and there are some judges that immediately will put

2   a person in prison.  That's not the case here.  That's simply

3   not the case here.

4          And so I won't -- I cannot allow this sentencing

5   proceeding to proceed against the backdrop that doesn't fit

6   this case.  This is simply not a case where Mr. Oneal hasn't

7   been given opportunities.  This is simply not a case where the

8   notion that any jail time or further jail time in this case

9   would result in over-incarceration that unnecessarily creates

10  additional unwarranted and detrimental contact with the

11  criminal justice system where alternatives may exist.

12         Mr. Oneal was released and immediately upon his

13  release began to engage in criminal conduct and that is

14  putting aside -- that is putting aside the repeated offenses

15  of leaving his home, which by the way, again I don't believe

16  was impulsive.  You want to know why I don't believe it was

17  impulsive, Mr. Creizman?

18         MR. CREIZMAN:  Yes, I do.

19         THE COURT:  Because he explained to his probation

20  officer repeatedly that he didn't think he should have do it

21  and it wasn't part of the sentence.  He said, I don't think I

22  should have to do this, this is wrong.  The probation officer

23  said, no, no, no, you need to talk to your lawyer, you need to

24  raise it with the Court.  And what he said is, I'm going to do

25  what I want to do.  So that undermines the notion that

PROCEEDINGS

1  anything that has happened here is a result of any mental

2  health problem.

3          What it seems to me is that Mr. Oneal has decided

4  that he's going to do what he wants to do, notwithstanding

5  what this Court has said, and notwithstanding I think the

6  generosity that this Court has previously displayed to him.

7          Obviously I feel strongly about this case,

8  Mr. Creizman, I am -- I respect the way in which you have

9  advocated for Mr. Oneal here.  I just don't believe that

10  categorically, and this is -- you know, that we can say that

11  in every instance where you have even a young man like

12  Mr. Oneal that in every instance that punishment is not

13  necessary and that it must be an alternative to incarceration

14  without the punishment first, sufficient punishment.

15          MR. CREIZMAN:  Your Honor --

16          THE COURT:  Sufficient punishment.

17          MR. CREIZMAN:  Absolutely.  Absolutely.  And, your

18  Honor, I am not suggesting that your Honor depart from the

19  guidelines range, however it is ultimately determined I guess,

20  but meaning if he -- he needs to be certainly -- punishment

21  needs to play a part here, but again he's been through the

22  system so many times that my thought was, is there some way,

23  is there some path he can take other than -- because if it is,

24  you know, given that the purpose of supervised release is to

25  try to -- is try to help with reentry into society and, you

PROCEEDINGS

1   know, he violated it -- and I'm not asking for, you know, the

2   greatest of leniency here but I'm saying maybe we can all work

3   together and figure out if there's some way, something

4   different that could help that -- he's saying -- he is saying

5   he wants to do the right thing and so if maybe there is some

6   sort of opportunity that he can take advantage of that he

7   hasn't considered himself is all I'm saying.  And --

8           THE COURT:  Mr. Creizman, if I have to decide

9   about -- you know, so we have a guidelines range here and I'm

10   allowed to sentence above or below the guidelines, however the

11   Court deems appropriate, but if Mr. Oneal isn't an individual

12   worthy of a sentence at the higher end or the mid range of the

13   guideline range, what defendant is?  I mean --

14           MR. CREIZMAN:  I understand, your Honor.

15           THE COURT:  -- what does Mr. -- what do I have

16   before me that would suggest that a sentence at the lower end

17   of the guidelines range is appropriate for this defendant,

18   what fact do I have?  Because I'm telling you, I absolutely

19   reject the notion that any of the conduct here is related to

20   any ADHD and impulsivity, because the facts here undermine

21   that conclusion in its entirety.  There is deliberateness,

22   there is recalcitrance.

23           Again, Mr. Oneal said to his probation officer, and

24   somebody will correct me if I'm wrong, that he should not be

25   on home confinement, that he didn't believe that should be or

PROCEEDINGS

1  was part of the conditions of his release.  The probation

2  officer told him it was, he decided that he was going to act

3  differently.  That's not impulsive.  Going to multiple Home

4  Depots locations on a series of days, right, because it wasn't

5  just one time, when I purposely read all of the dates and all

6  of the various locations to illustrate the planning and

7  thoughtfulness that went into what Mr. Oneal, the conduct that

8  he engaged in.

9        So I'm just trying to understand what about the

10  facts in this case, not kind of an ideological position

11  separate from this defendant, but tethered to the facts of

12  this case make it such that Mr. Oneal should have a low end

13  guidelines sentence?

14        MR. CREIZMAN:  Well, your Honor, I'm not -- I'm not

15  suggesting a sentence that is not, you know -- I'm not

16  necessarily suggesting a shorter sentence so much as a

17  sentence that explores -- I mean, he's already served I think

18  now at least six months in --

19        THE COURT:  Seven, my count is seven months, but I

20  could be wrong.

21        MR. CREIZMAN:  Seven months.  Okay.  And so my

22  thought is that if -- that he could remain in incarceration,

23  that's one, you know, option, but I'm saying he also could

24  spend the rest of his sentence, whatever -- however long it

25  is, in home confinement -- not home confinement, I did not

PROCEEDINGS

1    mean to say home confinement, I meant to say --

2            THE COURT:  You meant community confinement.

3            MR. CREIZMAN:  -- community confinement, that would

4    be a major mistake that would -- you know, I don't want the

5    Court to be angry that I'm asking for that.

6            THE COURT:  Mr. Creizman -- for the record,

7    Mr. Creizman and I used to be colleagues in my former life,

8    but he's never appeared before me, but Ms. Berenson can let

9    you know the fact that I am animated certainly doesn't mean

10   that I am upset with anyone.

11           MR. CREIZMAN:  No.

12           THE COURT:  This is -- I'm an animated person, is

13   that fair, Ms. Berenson?

14           MS. BERENSON:  It is fair, your Honor.

15           MR. CREIZMAN:  I would say that my recollection of

16   you, is that you were animated then too and I myself am

17   animated --

18           THE COURT:  But I'm not upset with -- I'm not upset

19   with any arguments that you've made here, I just don't agree

20   with them.

21           MR. CREIZMAN:  I understand.  And I'm trying to say

22   that I don't -- look, I'm saying that if it needs to be at the

23   higher end of the guidelines it still doesn't preclude the

24   Court from putting him into community confinement.

25           THE COURT:  Well, then we're probably on the same

PROCEEDINGS

1    sheet of music then, Mr. Creizman.

2              MR. CREIZMAN:  Okay, that sounds good, I like that.

3              THE COURT:  All right.  Perhaps I misunderstood and

4    I think we are probably talking about the same thing the whole

5    time.

6              At the end of the day, Mr. Oneal, you can see the

7    Court is particularly frustrated with you, but you're a grown

8    man, I'm certain you can appreciate my frustration, am I

9    right?  You can understand why it is I might be this

10   frustrated with you, Mr. Oneal?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  All right.  So part of my frustration is

13   because -- and this is -- I promise this is not because of my

14   refusal to say I was wrong, it's because I made some

15   determinations about you when I resentenced you and those

16   determinations that I made was that you have the ability, the

17   intellect and certainly if you chose to, the wherewithal to

18   make better choices for yourself and for our community.  And

19   what you did when you got out was decided that you were going

20   to betray yourself as well as the Court and in making choices

21   that were contrary to the representations that you made to me

22   just before or at the sentencing hearing just before your

23   release.

24             THE DEFENDANT:  Can I say something, your Honor?

25             THE COURT:  You absolutely may say something,

PROCEEDINGS

1    Mr. Oneal.

2         THE DEFENDANT:  I feel like I -- I feel like certain

3    things is way out of context.  Like, I feel, like, certain

4    things in that probation report and in the report period makes

5    me looks way, way -- like, makes this whole situation like

6    way -- I left my house 13 -- a million times.  I went to Home

7    Depot and certain places.  It did not -- that's no, no.  Like,

8    me just going to Home Depot, I had permission.  I notice in

9    the probation report that the probation officer said that my

10   boss said I never had no permission to go to no Home Depot.

11   As even noted and as we spoke, there was renovation going on

12   at my place of employment and I was sent to certain different

13   Home Depots at certain different times.

14        THE COURT:  Were you sent there to steal?

15        THE DEFENDANT:  No, ma'am.

16        THE COURT:  Then you know what?

17        THE DEFENDANT:  No, but --

18        THE COURT:  At the end of the day, Mr. Oneal, what

19   we do know is that on some occasions you went to Home Depot,

20   right after I let you out, to steal.  That's what we know.  So

21   if you're concerned about what may have been a

22   miscommunication between your lawyer and the probation

23   department, what I'm going to tell you is don't you worry

24   about that, don't worry about that at all because what I have

25   a problem with is that you went to Home Depot to steal.  So do

PROCEEDINGS

1  you want to talk about that?

2              THE DEFENDANT:  Jeez.

3              THE COURT:  I'm sorry, Mr. Oneal?

4              THE DEFENDANT:  Your Honor, I did not go to Home

5  Depot with the intent to steal, that did not happen.

6              THE COURT:  No.  Okay.

7              THE DEFENDANT:  I was there and, you know...

8              THE COURT:  Yes.  You asked for an opportunity to

9  speak, are you done?

10             THE DEFENDANT:  Yes.  I'm saying -- trying to speak.

11             THE COURT:  I'm sorry.  I'm listening to you,

12 Mr. Oneal, but, you know, you're a grown man, I'm a grown

13 woman and if we're going to have a conversation it's going to

14 be an honest one.  I told you that -- I've articulated to your

15 attorney my frustration and why.  You know, we were -- it was

16 a little over a year ago that we were all on a call together

17 where --

18             THE DEFENDANT:  I fully understand.

19             THE COURT:  -- I talked to you about next steps and

20 trying to do right and making sure you make the right choices

21 and, Mr. Oneal, you immediately, immediately started

22 committing crimes of the same sort, not the same degree, I'm

23 going to give you that certainly -- and I appreciate,

24 Mr. Creizman, when you say none of these were non-violent

25 crimes, that matters to me significantly.

42

PROCEEDINGS

1    But immediately, Mr. Oneal, it was like you -- we

2 were on the phone, but in effect looked me in my face and told

3 me you were going to do one thing and then immediately went

4 and did another.  You know, put judge aside for a second, at

5 the end of the day your word to me -- I mean, I'm a little

6 older than you, but when I grew up what we used to say is my

7 word is my bond.

8    THE DEFENDANT:  Your Honor, you know, I want to say,

9 your Honor, I try to do good, try to stay on my word.  Certain

10 circumstances happen.  Your Honor, I apologize.  I'm not going

11 to sit here and try to minimize it, try to make excuses, your

12 Honor, all I do is just move forward from here today.

13    THE COURT:  That I appreciate, Mr. Oneal.  What you

14 just said right now I appreciate.  What you were saying

15 before, I didn't appreciate it as much, I got to tell you

16 that, you know, but what you just said just now, because at

17 the end of day we just have to have candid conversations.  You

18 speak through your lawyer, I speak with the government, but at

19 the end of the day you're a grown man.

20    THE DEFENDANT:  Yeah, but at the same time I feel

21 like certain things make me look way worse, like, how you said

22 I went and said, oh, oh, I don't steal, I'm not supposed to be

23 on this sentence, and I didn't chose what I wanted to do and I

24 feel like that was taken out of context.

25    So I spoke to my probation officer about something I

PROCEEDINGS

1   thought that wasn't right.  He did say speak to his lawyer,

2   but I did not sit there and have, like, the way it was

3   presented, like I presented it, I don't know or, like, I just

4   chose to be rebellious, I'm out here doing whatever I want,

5   that's not --

6          THE COURT:  Did your probation officer tell you, no,

7   you need to be on home confinement?  Was that made clear to

8   you?  I understand that you told him you thought that you

9   shouldn't.  Was it made clear to you by your probation officer

10  that, in fact, as far as he understood you needed to be on

11  home confinement.

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Was that unclear?  Right.  And you

14  didn't do that.

15         THE DEFENDANT:  But that's not unclear, that part

16  wasn't unclear.  Like at the same time, your Honor, I'm home.

17  So the unclear part is like me going to the mailbox.  I don't

18  know that it's going no saying I left my residence.  Honestly,

19  I do go to the corner store.  I'm home.  My mom working.  What

20  am I really going to do?  I'm going to the corner store.  I'm

21  going to get something to eat, I'm coming back to my house.

22  I'm not minimizing it, your Honor, but --

23         THE COURT:  Hold on a second.  Mr. Lehr, did you

24  understand there was some confusion on the part of Mr. Oneal

25  as to what the parameters were with respect to home

PROCEEDINGS

1    confinement?  Did you ever have an opportunity to explain to

2    him that going to the corner store perhaps was also a

3    violation and that home meant at home?

4              Give me a moment.

5              (Pause in proceedings.)

6              THE PROBATION OFFICER:  Yes.

7              THE COURT:  Yes, I'm back.

8              THE PROBATION OFFICER:  Your Honor, we had

9    discussion on multiple occasions.

10             First, we'll just address the mailbox and kind of

11   going downstairs and so forth.  There was a point where we

12   mitigated that situation because his mother -- the family owns

13   the building that he lives in, so he has certain

14   responsibilities, particularly the garbage and cleaning up and

15   sweeping up.

16             So once we got that established I provided a

17   schedule on a daily basis, whatever it was, a half hour, 45

18   minutes so he could perform those chores.  So that became --

19   that was a non-issue after a period of time.

20             THE COURT:  Do you know when was that approximately?

21             THE PROBATION OFFICER:  Your Honor, I would say that

22   was probably, you know, maybe halfway through his term on

23   ankle bracelet.  I mean, I had the conversation --

24             THE COURT:  Before or after the arrest is the

25   question I guess.

PROCEEDINGS

1      THE PROBATION OFFICER:  I think I actually, as I

2   recall, I did it even after the arrest.  Because I didn't want

3   him to be or his mother really to be in a situation where

4   certain things couldn't get done, so I understood that.  But

5   going to the corner store was an issue and I didn't really buy

6   the excuse that he didn't have any food or anything to eat.

7   This is -- he lives with his mom.  His mom is out on a daily

8   basis going to work, she's not homebound or anything like

9   that.  It's just the two of them in the apartment.  I assume,

10  you know, there was food to eat and so forth.

11      THE COURT:  Yes.  All right.  Mr. Oneal, I hear you

12  and I suspect that there was a period of time where there was

13  some genuine, either confusion or perhaps some necessities

14  with respect to your obligations at the house, but it sounds

15  to me that the Probation Department made every effort to

16  accommodate those concerns and notwithstanding we find

17  ourselves with violations that it appears to me were

18  subsequent to the efforts by the Probation Department to

19  accommodate you and subsequent to the Probation Department

20  clarifying for you what your obligations were.  So then at a

21  certain point, Mr. Oneal, you moved from confusion or where

22  the Court can say perhaps your conduct was based on confusion

23  or even your own sense of necessity, to a simple disregard for

24  the Court's order and the opportunities that the Court gave to

25  you.

PROCEEDINGS

1    So I'll accept it's not a hundred percent black and

2    white.  You still have a problem.  All right.

3    Anybody else have anything that they'd like to add.

4    Ms. Berenson.

5    MS. BERENSON:  No, thank you, your Honor.

6    THE COURT:  All right.  After assessing the facts in

7    this case and in light of the 3553(a) factors and the

8    sentencing guidelines as well as arguments from the parties, I

9    have determined that a sentence within the advisory guideline

10   range is warranted.

11   Mr. Creizman, I have accounted for or will account

12   for the Court's prior determination that Mr. Oneal's criminal

13   history was overstated.  His conduct here doesn't change that

14   fact, that his criminal history was made up of conduct that

15   occurred when he was 16 years old and for the reasons that I

16   determined that it was overstated previously, I find that it

17   is overstated now.  So if I did that, the guidelines range in

18   this case is six to 12 months, that's correct?

19   MR. CREIZMAN:  That's correct, your Honor.

20   THE COURT:  All right.  So using the six to 12

21   months as the basis here, I'm sentencing Mr. Oneal to 12

22   months of custody, which means that -- no.  I'm going to

23   sentence Mr. Oneal to 12 months and a day.  And I'm doing

24   that, Mr. Oneal, so that you understand.  I don't know how you

25   have conducted yourself since you have been in custody since

PROCEEDINGS

1    July, however, as you know you have the opportunity to earn

2    good time.  By sentencing you to 12 months and a day, you can

3    take advantage of good time served if, in fact, you have

4    earned it, which would allow you to be released at

5    approximately 10 months.  It's 57 days, so it's 10 months and

6    three days, thereabouts.

7              But at this point, Mr. Oneal, you know, your liberty

8    is something you are going to have to decide is as important

9    to you as it has been to this Court.  You're going to have to

10   decide that changing your life is as important to you as the

11   opportunities that have been provided to you to do so.  So

12   hopefully, it is my hope that what Mr. Creizman will learn is

13   that you have indeed earned good time served, which would

14   bring the sentence here, in terms as a practical matter, in

15   line with what I believe Mr. Creizman and you all had hoped

16   for at the outset.  So whether it is 10 months or 12 months

17   will be dependent on how well you have behaved since you've

18   been there.

19             I'm just curious, Mr. Oneal, what do you think?  You

20   think while you've been there you've earned good time and that

21   this is going to look like it's closer to 10 months of actual

22   custody for you?

23             THE DEFENDANT:  Oh, since incarcerated I've not

24   gotten into any trouble, your Honor.  I've not gotten into any

25   trouble.

PROCEEDINGS

1          THE COURT:  All right.  This is what I'm going to

2    tell you, don't get into any trouble while you are there.  Do

3    not get into any.  Whatever you've been doing up to now to

4    stay out of trouble, keep it up and you will have the

5    opportunity to be released consistent with the statute

6    concerning good time served.

7          Do you understand what I'm explaining to you?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  All right.  All right.  So again, I've

10   sentenced Mr. Oneal to 12 months and one day in custody.  All

11   right.

12         Now, supervised release.  I must also consider

13   whether to impose a term of supervised release.  Now by

14   statute the Court may order a new term of supervised release.

15   The new term of supervised release following a violation could

16   be up to the maximum term of supervised release that was

17   authorized at the original sentencing.  Again, that is three

18   years minus any custody ordered on a prior or current

19   violation.

20         Now in deciding a term of supervised release I must

21   consider factors that are similar to those considered for

22   custodial a period, but here they are set out in 18 U.S.C.,

23   Section 3583(c), that includes the nature and the

24   circumstances of the offense, history and characteristics of

25   the defendant, the need to afford adequate deterrents to

PROCEEDINGS

1    criminal conduct, the need to protect the public from further

2    crimes of the defendant, the need to provide the defendant

3    with needed educational or vocational training, medical care

4    and other correctional treatment in an effective manner.  The

5    need to avoid unwarranted sentencing disparities amongst

6    defendants with a similar record who have been found guilty of

7    similar conduct, and the need to provide restitution of any

8    victims of the offense, the kinds of sentences and the

9    sentencing range and other policy statements.

10             Ms. Berenson, I'll hear from you.

11             MS. BERENSON:  Your Honor, the government defers to

12    probation on this but does believe that a period of supervised

13    release is important in this case.

14             THE COURT:  Okay.  Remind me, Probation -- there you

15    are -- what was your recommendation here.

16             THE PROBATION OFFICER:  Your Honor, we recommended

17    three years of supervised release with four special

18    conditions.  Would you like me to read them out or just

19    summarize them?

20             THE COURT:  So I have them.  I have them -- hold on,

21    give me a moment.  I have the restitution order, the drug

22    treatment, employment, and the disclosure of financial records

23    as the special conditions.  Am I missing something or are you

24    talking about -- hold on.

25             THE PROBATION OFFICER:  Your Honor --

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1      THE COURT:  Give me a second, I have it in front of

2  me.  Here it is.  Out-patient drug treatment, alcohol and

3  intoxicants, employment, disclosures, that's all I have.  Am I

4  missing something?

5      THE PROBATION OFFICER:  Your Honor, the very last

6  page of the violation number four requested a search

7  condition.

8      THE COURT:  Yes, yes, yes, I see it.  Okay.  All

9  right.

10      All right, Mr. Creizman, you talked when we were

11  doing the custodial -- talking about the custodial sentence

12  here you talked a bit about the community confinement upon

13  Mr. Oneal's release.  I believe that that would be a prudent

14  course here.  But I'll hear from you in terms of supervised

15  release.

16      MR. CREIZMAN:  Well, your Honor, I think the goal is

17  to try to get to help Mr. Oneal to help himself and do what he

18  has to do, and I think that maybe going directly to something

19  like house arrest, because I can't imagine that wouldn't be a

20  condition at least initially, if he went into home -- if he

21  went into community confinement initially and tried to take

22  advantage of, you know, all the programs he could possibly

23  take advantage of.  I would hope that he demonstrates some

24  progress the Court would consider at the appropriate time

25  under the statute a motion for early termination of supervised

51

PROCEEDINGS

1  release.  That would be the goal, in my view, is that he

2  manages to demonstrate that he can be an involved parent, that

3  he can get his, you know, his employment under control, and so

4  on and get his life together.  And so my -- that would be the

5  goal.

6           Meaning I don't think that a, you know, three-year

7  term of supervised release is lengthy, but my hope is that he

8  could demonstrate to the Court over the next -- once he is

9  released and then is released from the halfway house and going

10  into the community that he can actually succeed on his own and

11  raise his family and honor his obligations to the Court and to

12  his family and to himself.

13           THE COURT:  Look, at the end of the day that's my

14  ultimate goal as well.  I am a judge who believes strongly

15  that supervised release can be used as a tool to assist an

16  individual in that transition period if they take full

17  advantage of the resources that are made available to them,

18  and if the Court takes a reasonable approach to the way in

19  which it views an individual on supervised release.

20  Certainly, engaging in unlawful conduct or otherwise

21  disregarding the directives of the probation officer is not

22  viewed in this Court's estimation as acceptable behavior.  But

23  I think here that -- how old is Mr. Oneal at this time?

24           THE DEFENDANT:  Twenty-seven.  Your Honor, can I ask

25  you something?

PROCEEDINGS

1         THE COURT:  Sure.

2         THE DEFENDANT:  I was just -- what's his name, right

3  you said 12 months and a day.  I'm just being like logical and

4  realistic.  It's something me and my lawyer spoke about

5  previously the details, that fails -- like if I do twelve

6  months in jail or whatever, I got seven months in jail,

7  surrendered myself to jail, there's nothing -- there's nothing

8  going on here.  We're locked in our cells 24/7.  I'm not

9  asking for a lesser sentence or whatever, but what I'm saying

10 is right now moving forward I got to do three months or four

11 more months, I'm just really just stuck in my cell.  There's

12 no -- nothing going on.  There's no movement at all 'cause of

13 COVID.  Like that really kind of like I feel doesn't --

14 doesn't rehabilitate, doesn't do nothing.

15         I'm not asking to be released or nothing, I'm asking

16 for community confinement because in a halfway house I could

17 get programs, I could get certain things that I need.  When I

18 was released last I did not get halfway house, I was just

19 released.  Not to say it wasn't me, but I feel like a halfway

20 house or like an inpatient drug program would kind of help me

21 better with mental health.

22         THE COURT:  No, I hear you and I appreciate that.

23 I'm glad you and Mr. Creizman had the opportunity to talk

24 about the benefits of community confinement.

25         First, I'll say to you again, I sentenced you to a

PROCEEDINGS

1    year and a day which hopefully if what you say is correct

2    about your conduct, means that what we're talking about is 10

3    months as opposed to 12.

4            But this is my question to you, Mr. Oneal.  When I

5    let you out, then you went and committed these other crimes,

6    was COVID already present or was -- because, you know, some

7    people who committed crimes in February of 2020 had no idea

8    that COVID was coming down the pike.  But if my memory serves,

9    you were released on compassionate release in part because of

10   COVID, and I'm pretty sure COVID was still going on when you

11   decided you were going to engage in unlawful conduct.  So the

12   concerns regarding what happened when you were in jail during

13   COVID, you knew about those risks, right?

14           THE DEFENDANT:  Yes, I definitely --

15           THE COURT:  So you want me to care more about it

16   than you did?

17           THE DEFENDANT:  No, listen, miss, I'm not telling

18   you to care -- I'm not even basing COVID on what I'm talking

19   about.  All I'm saying is that in jail when COVID is going on

20   there's nothing going on at all.  It's like me being put in a

21   closet, closing the door and it's, like, if I'm getting

22   rehabilitative services during these times I think I would be

23   best suited for.

24           THE COURT:  I believe that as well.  I wanted that

25   for you, Mr. Oneal, that's what I wanted for you.  We had a

PROCEEDINGS

1    long conversation about that.  Read the transcript.  Because I

2    went back and read the transcript from your recent sentencing

3    hearing.

4              THE DEFENDANT:  I did too.

5              THE COURT:  I know more about your case I think, you

6    know, than I do most in terms of all the details without

7    having to look at the paper because I went back and read it.

8              I want that for you.  I want rehabilitation for you,

9    I want you to have access to resources, but right now,

10   Mr. Oneal, we've got to finish this time, that's what has to

11   happen first.  And then once we get there, then I really do

12   hope that you take advantage of every, every resource that is

13   available to you.

14             THE DEFENDANT:  I understand.

15             THE COURT:  If there's a program you want to be part

16   of, if there's vocational programming you're interested in, if

17   there is mental health treatment that you're interested in, if

18   there's drug treatment that you're interested in, please tell

19   your probation officer and if your probation officer doesn't

20   act on it, you tell your lawyer to raise it with me.  Because

21   I want you to have available to you every single opportunity

22   to succeed, but first we got to do this.  But first we got to

23   do this.

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  All right.  But I really --

PROCEEDINGS

1          THE DEFENDANT:  Yes.

2          THE COURT:  -- hope that what you're talking about

3     here in terms of programs, et cetera, that when you come out,

4     that what you actually do is to try and take advantage of it.

5     I really hope that this isn't just lip service, but we will

6     all find out when you come out and hopefully you have earned

7     the right to come out sooner rather than later.

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  I will do everything in my power and my

10    authority to help you succeed and to make sure that you have

11    the resources to do so.  So I'm going to do my job, when I am

12    asking you, Mr. Oneal, is that you do yours.

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  All right.

15         So, Mr. Creizman, I am just curious, when you say a

16    period of home confinement -- excuse me, I did it too now.  I

17    am curious if you have a specific time period in mind that you

18    believe that community confinement that you have in mind.

19         MR. CREIZMAN:  No, I don't actually.  But I mean I

20    think that perhaps a three-month period is appropriate, but,

21    you know, it's hard really to make that assessment.

22         THE COURT:  What about probation, what does

23    probation think.

24         THE PROBATION OFFICER:  Your Honor, I'm thinking

25    through the practicality of this.  Since your Honor sentenced

PROCEEDINGS

1    today he may actually wind up going to a halfway house as part

2    of that sentence because there may be some time, but if he

3    does that, because of COVID and depending on his risk level,

4    they may actually put him on home confinement through the

5    halfway house which kind of puts him back to where he was

6    before, except it's not us monitoring him.

7              THE COURT:  Wait, I'm a little confused.  You're

8    telling me that my sentence, which says that Mr. Oneal should

9    stay in custody for three more months, may not be honored by

10   the BOP.

11             THE PROBATION OFFICER:  No, I'm saying as part of

12   the BOP they may decide a portion of it can be served at the

13   halfway house.

14             THE COURT:  If that's what they decide, they decide

15   in their own estimation, and so -- but that period of time

16   would be the remainder -- would be the remaining three months

17   and then after -- so he would have a three-month period

18   perhaps that the BOP has put him on community confinement, is

19   what you're saying.

20             THE PROBATION OFFICER:  I'm saying that's a

21   possibility, but then if that did happen would your Honor want

22   him to have an additional three months as part of supervised

23   release.

24             THE COURT:  What I would do is sentence him to an

25   additional three months of home confinement as part of

PROCEEDINGS

1   supervised release.  And Mr. Creizman, who is very diligent,

2   if he wanted to make an application to this Court after

3   demonstrating -- if Mr. Oneal were to demonstrate something to

4   my satisfaction perhaps I would reconsider it, but I would

5   certainly order it today nonetheless.

6          THE PROBATION OFFICER:  Okay.  I just wanted to be

7   clear on that one point depending on how it could work out.

8          THE COURT:  Right.  Look, Mr. Oneal, the BOP has the

9   ability to do what it would like to within the confines of the

10  law and I do believe -- thank you, Mr. Lehr, for reminding the

11  Court, the BOP may make a determination that it will place you

12  on home confinement for the remainder of the sentence that

13  I've imposed, but I've imposed my sentence nonetheless and I

14  will impose along with the supervised release that I do intend

15  to impose, an additional period of home confinement.  And,

16  Mr. Creizman, I have no doubt that you will advocate as you

17  see fit for Mr. Oneal.

18         So I'm going to order here that Mr. Oneal be placed

19  on three years of supervised release with the first three

20  months in community confinement.  The following three months

21  Mr. Oneal will be subject to a curfew as set out by the

22  Probation Department.

23         All right.  In addition to the -- let me take a step

24  back.  All right, Mr. Oneal, I need to make sure that you

25  understand that if you violate any of the conditions of your

PROCEEDINGS

1    supervised release I may sentence you to up to two years in

2    prison without credit for your pre-release imprisonment or

3    time previously served on post-release supervision.

4            As I've indicated, I am sentencing you to three

5    years of supervised release.  As a special condition of that

6    supervised release the first three months of supervised

7    release will be served in community confinement, the following

8    three months Mr. Oneal will be subject to a curfew.  All

9    right.

10           Now during your period of supervised release you

11   must abide by the following mandatory conditions of supervised

12   release.  Mr. Oneal, you must not commit another federal,

13   state or local crime.

14           You must not unlawfully possess a controlled

15   substance.  You must refrain from any unlawful use of a

16   controlled substance and you must submit to one drug test

17   within 15 days of release from imprisonment and at least two

18   periodic drug tests thereafter as determined by the Court.

19           Mr. Oneal, you must make restitution in accordance

20   with 18 U.S.C., Section 3663 and 3663(a) and any other statute

21   authorizing a sentence of restitution.

22           Mr. Oneal, you must cooperate in the collection of

23   DNA as directed by the probation officer.

24           You shall also, sir, abide by the following standard

25   conditions of supervised release.  You shall report to the

PROCEEDINGS

1  probation office in the federal judicial district where you

2  are authorized to reside within 72 hours of release from

3  imprisonment unless the probation officer instructs you to

4  report to a different probation office or within a different

5  timeframe.

6          After initially reporting to the Probation office,

7  Mr. Oneal, you'll receive instructions from the Court or the

8  probation officer about how and when to report to the

9  probation officer and, Mr. Oneal, you shall report as

10 instructed.

11         Mr. Oneal, you shall not knowingly leave the federal

12 judicial district where you are authorized to reside without

13 first getting permission from the Court or the probation

14 officer.  You shall answer truthfully the questions asked by

15 the probation officer.

16         Mr.  Oneal, you shall live at a place approved by

17 the probation officer and if your plans change with respect to

18 where you live or anything about your living arrangements,

19 including the people you live with, you shall notify the

20 probation officer at least 10 days before the change.  If

21 notifying the probation officer at least 10 days in advance is

22 not possible due to unanticipated circumstances, you shall

23 notify the probation officer within 72 hours of becoming aware

24 of a change or expected change.  You shall allow the probation

25 officer to visit you at any time in your home or elsewhere

PROCEEDINGS

1  and, Mr. Oneal, you shall permit the probation officer to take

2  any items prohibited by the conditions of your supervision

3  that the probation officer observes in plain view.

4          Mr. Oneal, you shall work full time and that is at

5  least 30 hours per week at a lawful type of employment unless

6  the probation officer excuses you from doing so.  If you do

7  not have full-time employment, you shall try and find

8  full-time employment unless the probation officer excuses you

9  from doing so.  If your plans change with respect to where you

10 work or anything about your work, you shall notify the

11 probation officer at least 10 days before the change.  Now, if

12 notifying the probation officer in advance is not possible due

13 to unanticipated circumstances, Mr. Oneal shall notify the

14 probation officer within 72 hours of becoming aware of the

15 change or expected change.

16         To the extent that Mr. Oneal is enrolled in a

17 vocational training program, the Court will view that

18 vocational training program as satisfying his employment

19 obligation.

20         He shall not communicate or interact with someone he

21 knows is engaged in criminal activity.  Mr. Oneal, if you know

22 someone's been convicted of a felony, you shall not knowingly

23 communicate or interact with that person without first getting

24 permission of the probation officer.

25         If you are arrested, Mr. Oneal, or questioned by a

PROCEEDINGS

1    law enforcement officer, you shall notify the probation

2    officer within 72 hours.

3         Mr. Oneal, you shall not own, possess or have access

4    to a firearm, ammunition, destructive device or dangerous

5    weapon, that is anything that was designed or was modified for

6    the specific purposes of causing bodily injury or death to

7    another person like a taser.

8         You shall not act or make any agreement with a law

9    enforcement agency to act as a confidential human source or

10   informant without first getting permission from the Court.

11        If the probation officer determines, based on your

12   criminal record, personal history and characteristics and the

13   nature and circumstances of your offense, you pose a risk to

14   another person, including an organization, the probation

15   officer, with prior approval of the Court, may require you to

16   notify the person about the risk and you must comply with the

17   instruction.  The probation officer may contact the person and

18   confirm that you have notified the person about the risk.

19        Mr. Oneal, you will follow the instructions of the

20   probation officer related to the conditions of your release.

21        In addition, Mr. Oneal, you must abide by the

22   following special conditions:

23        Mr. Oneal, you must participate in an out-patient

24   drug treatment program approved by the U.S. Probation

25   Department.  You shall contribute to the cost of such

PROCEEDINGS

1    treatment not to exceed an amount determined reasonable by the

2    Probation Department's sliding scale for substance abuse

3    treatment services and shall cooperate in securing any

4    applicable third-party payment such as insurance or Medicaid.

5            Mr. Oneal, you shall disclose all financial

6    information and documents to the probation officer to assess

7    your ability to pay.

8            Mr. Oneal, you shall not consume any alcohol or

9    other intoxicant during and after treatment unless granted a

10   prescription by a licensed physician and proof of the same is

11   provided to the Probation Department.

12           Mr. Oneal, you shall submit to testing during and

13   after treatment to ensure abstinence from drug and alcohol.

14           Next, Mr. Oneal, you shall maintain again full-time,

15   verifiable employment and/or you shall participate in

16   education or vocational training program as selected by the

17   Probation Department.

18           Three, upon request, Mr. Oneal, you shall provide

19   the U.S. Probation Department with the full disclosure of your

20   financial records, including commingled income, expenses,

21   assets and liabilities, to include yearly income tax returns.

22           With the exception of the financial accounts

23   reported and noted within the presentence report, Mr. Oneal,

24   you are prohibited from maintaining and/or opening any

25   additional individual and/or joint checking, savings or other

PROCEEDINGS

1    financial accounts for either personal or business purposes

2    without the knowledge and approval of the U.S. Probation

3    Department.

4            Mr. Oneal, you shall cooperate with the probation

5    officer in the investigation of your financial dealings and

6    you shall provide truthful monthly statements of your income

7    and expenses, and you shall cooperate in the signing of any

8    necessary authorizations to release information forms

9    permitting the U.S. Probation Department to access your

10   financial information and records.

11           And, fourth, Mr. Oneal, you shall submit your

12   person, property, house, residence, vehicle, papers, computers

13   all of which are defined in 18 U.S.C., Section 1030(e)(1) and

14   other electronic communications or data storage devices or

15   media or office to a search conducted by the U.S. Probation

16   officer.  Now failure to submit to a search may be grounds for

17   revocation of release.

18           Now, Mr. Oneal, you shall warn any other occupants

19   that the premises may be subject to searches pursuant to this

20   condition.  Now an officer may conduct a search pursuant to

21   this condition only when reasonable suspicion exists that you

22   have violated a condition of your supervision and that the

23   areas to be searched contain evidence of this violation and

24   any search must be conducted at a reasonable time and in a

25   reasonable manner.

PROCEEDINGS

1          Mr. Creizman, with respect to the special

2    conditions, the four that I've just outlined, in addition to

3    the community confinement and the curfew, are the reasons for

4    these special conditions apparent to you on the face of the

5    condition?

6          MR. CREIZMAN:  They are, your Honor.

7          THE COURT:  All right.  All right.

8          Mr. Oneal, you have a statutory right to appeal the

9    sentence that I've imposed today under certain circumstances,

10   particularly if you believe your sentence is contrary to law.

11   Any Notice of Appeal must be filed within 14 days of the entry

12   of judgment or within 14 days of the filing of a Notice of

13   Appeal by the government.  If requested, the Clerk of the

14   Court will prepare and file a Notice of Appeal on your behalf.

15   If you cannot afford to pay the cost of an appeal or for

16   appellate counsel, you have a right to apply for leave to

17   appeal in forma pauperis, which means you can apply to have

18   the Court waive the filing fee and on appeal, Mr. Oneal, you

19   may also apply for court-appointed counsel.  All right.

20         Does the government wish to move to dismiss the

21   remaining charges?

22         MS. BERENSON:  Yes, your Honor.

23         THE COURT:  All the remaining charges are dismissed

24   on motion by the government.

25         Ms. Berenson, is there anything else from the

PROCEEDINGS

1    government that the Court needs to address?

2              MS. BERENSON:  No, your Honor.

3              THE COURT:  Mr. Creizman?

4              MR. CREIZMAN:  No, your Honor, thank you.

5              THE COURT:  You're welcome.

6              Mr. Oneal, I said this to you before, I'm going to

7    say it to you again.  It is my sincere hope that you take

8    advantage of the opportunities that are being presented to

9    you.  I understand that the outcome today is not exactly what

10   it is that you wanted or hoped for, but in this, sir, are

11   still opportunities and you are going to get out of jail

12   perhaps immediately or perhaps within the next three months.

13   The ball is in your court.  The direction that your life is

14   going to take is really going to be up to you.

15             You don't like jail, you've said it to your lawyer.

16   Don't put yourself in a position to be in front of me again,

17   all right.  Ask for help when you need it and take advantage

18   of the resources that are available to you.  You have an

19   excellent attorney who has advocated on your behalf and

20   whether you like the determination that I made here today or

21   not, you also have a judge who cares about your future.  I

22   really believe that you have it in you to do more.  You're

23   capable of doing more, so stop letting yourself down.

24   Understood?

25             THE DEFENDANT:  Yes, ma'am.

PROCEEDINGS

1          THE COURT:  All right.  Good luck to you and I

2     really do hope that the next time that I have you before me is

3     because it's being reported to me that you have successfully

4     completed your term of supervised release and that you are

5     on -- you know, having a happy and fruitful life.  Well, maybe

6     not fruitful, I don't know why I said fruitful, but happy and

7     prosperous life.

8          All right.  Good luck, Mr. Oneal.  Do better, all

9     right?

10         THE DEFENDANT:  Yes, ma'am.

11         MR. CREIZMAN:  Thank you, your Honor.

12         THE COURT:  All right.  Bye, all.  Good to see you.

13         MS. BERENSON:  Thank you, your Honor.

14         THE COURT:  Bye.

15         (Matter concluded.)

16                    *     *     *     *     *

17    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.

18

19    s/ Georgette K. Betts          April 27, 2022

20    GEORGETTE K. BETTS             DATE

21

22

23

24

25

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*